**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **BENCHMARK ELECTRONICS, INC.**<br>56 S. Rockford Drive<br>Tempe, AZ 85282**,**<br><br>**Plaintiff,**<br><br>v.<br><br>**NICK MYERS**<br>1500 Larkspur Court<br>Huntingtown, MD 20639,<br><br>**Defendant.** | Case No. |

**COMPLAINT TO VACATE FINAL ARBITRATION AWARD**

American Arbitration Association ("AAA") Arbitrator Andree McKissick awarded nearly $1,400,000 to a former employee of Plaintiff, Benchmark Electronics, Inc. ("Benchmark") who left the company after just four months. The employee quit his vice-president position at Benchmark to return to his former employer after a pay dispute arose surrounding the basis for calculating his 2016 pro-rated bonus. The pro-rated bonus at issue in that dispute covered just over two months of work performed in 2016. Despite entreaties from Benchmark's CEO and senior executives urging the employee to stay at Benchmark, the employee *elected* to resign from Benchmark and accept a pay package at his former employer that was less than the value of his Benchmark pay package. As a partial justification for his departure, the Defendant contended that Benchmark's position on his pro-rated 2016 bonus was at odds with the terms of his offer letter. Even if that were true, the uncontroverted testimony of Benchmark's CEO and other senior leaders was that they were willing to work with Defendant Myers to allay his concerns over compensation. The Arbitrator nonetheless predicated her Final Award on the legally

unsustainable premise that any employee who feels misled over the terms of his compensation can simply resign voluntarily and then expect to recover any differential in compensation as damages. On this basis, as well as other infirmities set forth below, the Arbitrator's Award exceeded her authority and was in manifest disregard of the law, as well as the uncontested facts presented in the arbitration. Her Award should be vacated.

Pursuant to 9 U.S.C. § 10, Plaintiff Benchmark submits this complaint to vacate the final award made by the single Arbitrator appointed by the American Arbitration Association in the matter of Nick Myers v. Benchmark Electronics, Inc., AAA Case No. 01-17-0005-7313. In support thereof, Plaintiff states as follows:

## PARTIES

1. Plaintiff Benchmark is a Texas corporation with a principal office and headquarters located at 56 South Rockford Drive, Tempe, Arizona 85281.

2. Defendant Nick Myers ("Myers") is an individual residing in Maryland.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Although the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, does not itself provide jurisdiction, it does set forth the bases under which this Court can assess and vacate the final award.

4. Pursuant to 28 U.S.C. § 10(a), venue is proper in this District because the findings and rulings of the Arbitrator, which form the basis of this action, were made in this District before an AAA-appointed arbitrator and because the arbitration agreement between Plaintiff and

2.

Defendant provided for matters to be arbitrated in the state in which Defendant worked – which was also in this District.

## BACKGROUND

5. Benchmark provided Myers with an employment offer letter dated September 21, 2016. That offer letter summarized the compensation package Benchmark offered Myers.

6. Benchmark's offer letter stated, *inter alia*, that Myers would receive a base salary, Long Term Incentive Plan grants subject to vesting requirements, a one-time Restricted Stock Unit Grant also subject to vesting requirements, an annual bonus of up to 50% of his base salary based on meeting bookings goals for sales to the industry sector for which Myers was responsible, and a pro-rated bonus for his work in 2016.

7. Myers accepted Benchmark's employment offer, and began employment with Benchmark on or about October 17, 2016.

8. The Parties entered into a Confidential Information, Proprietary Rights and Arbitration Agreement ("Arbitration Agreement") on or about September 26, 2016.

9. The Parties' Arbitration Agreement states that "[t]he arbitrator shall have full authority to award or grant all remedies provided by law, *but only* to the same extent as would a court hearing the claim that is in arbitration." (emphasis added).

10. In December 2016, Myers began asking questions about his pro-rated bonus for 2016, as described in his offer letter.

11. In response to Myers' inquiry, Benchmark's Executive Vice President of Business Development and Marketing, Greg Cominos, explained that "your pro-rated 2016 bonus payout will be calculated on corporate performance unaffected by the 2017 20% holdback…" Cominos further explained that "the 2017 annual bonus will be based on bookings . . . ."

12. At no time did Benchmark tell Myers, or even suggest to him, that his bonuses going forward (for 2017 and on) would not be based on meeting sector bookings targets.

13. At no time did Benchmark inform Myers that the other elements of compensation in his offer letter would not be provided.

14. Myers resigned from Benchmark, effective February 27, 2017.

15. Bonuses for 2016 had not even been finalized, approved or paid by the time Myers resigned.

16. Benchmark determined that Myers' sector had not attained its 2016 bookings target.

17. Myers filed a demand for arbitration before the American Arbitration Association ("AAA") on or about September 25, 2017.

18. Myers' arbitration demand alleged claims for breach of contract, intentional misrepresentation, negligent misrepresentation, and a violation of the Maryland Wage Payment and Collection Law ("MWPCL").

19. Myers claimed that he was owed a pro-rated bonus for 2016 of more than 50% of his base salary earned that year.

20. Myers' arbitration demand did *not* include any claim alleging discharge or constructive discharge from Benchmark.

21. Myers' arbitration demand alleged that "[b]ecause [Benchmark] intentionally deceived [Myers], and provided [Myers] false information regarding [Myers'] salary and bonus, [Myers] resigned on February 17, 2017. [Myers'] resignation was effective February 27, 2017."

22. Arbitrator Andreé McKissick was selected to hear the matter.

23. The liability portion of the claim was heard before Arbitrator McKissick on April 3, 4 and 5, 2018.

24. The Parties submitted post hearing briefs to Arbitrator McKissick on or about June 8, 2018.

25. In its post hearing brief, Benchmark presented authority supporting the principle that a *bona fide* dispute within the meaning of the MWPCL exists if there is "'a legitimate dispute over the validity of the claim or the amount that is owing [ ]' where the employer has a good faith basis for refusing an employee's claim for unpaid wages." Benchmark further presented authority supporting the principle that "[t]he inquiry into whether an employer's withholding of wages was the result of a bona fide dispute is one concerned with the employer's 'actual, subjective belief that the party's position is objectively and reasonably justified.'"

26. Arbitrator McKissick issued an opinion and award on the liability phase of the matter on July 9, 2018 ("Liability Award").

27. Arbitrator McKissick's Liability Award found in favor of Myers on his claims for breach of contract, intentional and negligent misrepresentation, and violation of the MWPCL with respect to Myers' 2016 pro-rated bonus, but denied Myers' claim that he was owed a pro-rated 2016 bonus in excess of 50% of his base salary paid in 2016.

28. Arbitrator McKissick's Liability Award nevertheless found that there was no *bona fide* dispute as to whether a pro-rated 2016 bonus was payable or the amount, thus making Myers eligible to collect up to treble the amount of the pro-rated 2016 bonus ($ 21,214.05, which she later directed to be awarded in her subsequent and final Damages Award).

29. The damages portion of the claim was heard before Arbitrator McKissick on October 1 and 2, 2018.

30. At the damages hearing, Myers claimed that he should recover damages reflecting the difference in compensation between the job he held prior to becoming employed by Benchmark and the job he held after he resigned from Benchmark and returned to his former employer.

31. At the hearings in this matter, Myers testified that he resigned from Benchmark for numerous reasons, including a number of reasons unrelated to Benchmark's representations regarding Myers' compensation and bonus package.

32. In its post hearing brief, Benchmark presented authority supporting the principle that to recover the damages that Myers was seeking, Myers would need to prove that he was constructively discharged by Benchmark, and that his pay dispute over his pro-rated bonus for two and a half months of work in 2016 could not satisfy the established standards for proving constructive discharge.

33. Benchmark provided copies of governing case law for Arbitrator McKissick to read.

34. In his post hearing brief, Myers presented no authority supporting the principle that his claims for breach of contract, intentional misrepresentation, negligent misrepresentation, and/or a violation of the MWPCL provided justification for resigning his employment and recovering damages as if he had been constructively discharged.

35. Arbitrator McKissick's Award on damages and calculation of damages – the difference between Myers' compensation package at his former employer prior to leaving to join Benchmark in October 2016 and Myers' compensation package upon returning to his former employer in February 2017 ("Compensation Delta") – was predicated on the conclusion that "[a]lthough the total economic package would have been higher had Claimant Myers stayed with

Benchmark, he felt that he could not trust the company. This was emotionally undermining for him, notwithstanding the higher amount of income that was offered but contradicted verbal assertions. Applying this standard to any claimant who was defrauded through concealment and misrepresentation as well as the usage of falsehood, that claimant would not choose to stay with such a company. Thus, the reasonable person would choose to cut his economic losses and leave this employment."

36. Arbitrator McKissick flouted established legal authority to support her conclusion in the preceding paragraph. Instead, she made up her own legal authority.

37. In its post hearing brief on damages, Benchmark expressly informed Arbitrator McKissick that awarding damages based on the Compensation Delta requested by Myers would be in manifest disregard of the law and facts.

38. Arbitrator McKissick's calculation of damages inexplicably set a five year projection of the Compensation Delta even though Myers himself testified under oath that it would only take up to "one to two years" to return to his level of compensation prior to leaving for Benchmark.

39. Arbitrator McKissick's Compensation Delta did not even account for Myers' full base salary, bonus, or long term incentive plan package upon returning to his former employer. Benchmark pointed this out in detail during the hearing, in expert testimony and unambiguously in its post hearing submission. As such, Arbitrator McKissick's Compensation Delta was artificially inflated and flouted the uncontested testimony and evidence admitted into the record regarding Myers' full compensation package —to which Myers admitted under oath -- after returning to his former employer.

Case 8:19-cv-00242-GJH Document 1 Filed 01/25/19 Page 8 of 10

40. Arbitrator McKissick nonetheless used the Compensation Delta as the basis for finding actual damages, and then doubled that amount in a punitive damages award.

41. Copies of the Interim Award on liability and the Final Award on damages will be submitted with a motion to place the Awards under seal due to the parties' confidentiality provision within the Arbitration Agreement.

## COUNT I

### 9 U.S.C. § 10 (a) (4) – Exceeding Arbitral Powers

42. Plaintiff restates and incorporates by reference the allegations contained in Paragraphs 1 - 41 of this Complaint.

43. In issuing the Interim and Final Awards, the Arbitrator exceeded her powers by granting an award and remedies beyond those provided by law, outside of the pleadings and sworn testimony, and in violation of the Arbitration Agreement's restriction that any award or remedy be available "to the same extent as would a court hearing the claim that is in arbitration."

44. Accordingly, the Arbitrator's Interim and Final Awards should be vacated.

## COUNT II

### Manifest Disregard of Law and Facts on the Record

45. Plaintiff restates and incorporates by reference the allegations contained in Paragraphs 1 - 41 of this Complaint.

46. In issuing the Interim and Final Awards, the Arbitrator manifestly disregarded the law. Among other areas, the Arbitrator failed to apply or heed the governing and clearly defined legal standards presented by Plaintiff with respect to the following:

    (a) Finding no *bona fide* dispute with respect to Myers' pro-rated 2016 bonus in the interim Liability Award;

 (b) Finding that a short-term employee who decides he does not to trust his employer because of a pay dispute is justified in resigning and recovering damages rather than remaining employed and, if necessary because no other resolution emerges, mitigating damages by arbitrating the pay dispute;

 (c) At once, recognizing Myers' legal obligation to mitigate his damages, but then manifestly disregarding the law and authority on mitigation by holding that Myers mitigated his damages by leaving a position with a greater compensation package for a position with a lesser compensation package;

 (d) Awarding punitive damages without analyzing or finding malice, tortious conduct of a "heinous" nature, or other legal prerequisites for awarding punitive damages separate from the underlying liability finding.

47. The Arbitrator also manifestly disregarded the law and undisputed record facts by finding that:

 (a) The Compensation Delta awarded to Myers should extend for five years, rather than the "one to two years" that Myers himself testified under oath was the correct time period;

 (b) The Compensation Delta awarded to Myers should be based on a deflated projection of Myers' post-Benchmark pay, that failed to take into account undisputed evidence on (i) Myers' full base salary, (ii) Myers' bonus, or (iii) Myers' long term incentive program grant – even though Myers testified under oath that he received all of these components of additional compensation upon his return to his former employer.

48. Accordingly, the Arbitrator's Interim and Final Awards should be vacated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Benchmark Electronics, Inc. requests relief as follows:

1. Enter judgment in Plaintiff's favor and vacate the Arbitrator's findings and rulings on liability with respect to Defendant's MWPCL claim;

2. Enter judgment in Plaintiff's favor and vacate the Arbitrator's award of damages to Defendant;

3. Remand the matter to the AAA and issue an Order directing the AAA to appoint a different Arbitrator to proceed in a manner consistent with the judgment in this matter; and

4. Such further relief as the Court deems just and proper.

January 25, 2019

Peter J. Petesch (No. 12908)
Meredith L. Schramm-Strosser (No. 18537)
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW
Suite 400
Washington, DC 20006-4046
202.842.3400 Telephone
202.842.0011 Facsimile

Jedd Mendelson (motion for admission *pro hac vice* forthcoming)
LITTLER MENDELSON, P.C.
One Newark Center
8th Floor
Newark, NJ 07102
973.848.4700 Telephone
973.566.1612 Facsimile

*Counsel for Plaintiff
Benchmark Electronics, Inc.*